# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 8252 | **DATE** | 11/19/2002 |
| **CASE TITLE** | | Franklin vs. City of Evanston | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The Court grants Franklin's motion for summary judgment [#31] on his claim for deprivation of due process and denies it in all other respects. The court grants City of Evanston's motion for summary judgment [#28] in all respects but the claim for deprivation of due process, in which respect the motion is denied. This case will proceed on the issue of damages only. Date by which to file pretrial order is stricken, pretrial conference set for 12/3/02 is stricken and trial date of 12/9/02 is stricken and all will be reset at status hearing set for December 12, 2002 at 9:30 a.m. In the meantime, the parties are directed to meet in a sincere effort to resolve this case.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | 2 | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required. | | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | | NOV 2 0 2002 | | |
| | Notified counsel by telephone. | | | date docketed | | 46 |
| | Docketing to mail notices. | | | CV | | |
| | Mail AO 450 form. | | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | 11/19/2002 | | |
| MD | courtroom deputy's initials | | CLERK U.S. DISTRICT COURT | date mailed notice | | |
| | | | 02 NOV 19 PM 5: 03 | MD | | |
| | | | FILED-ED 10 | mailing deputy initials | | |
| | | | Date/time received in central Clerk's Office | | | |

|  |  |  |
|---|---|---|
| EDWARD FRANKLIN, | ) | |
| | ) | **DOCKETED** |
| Plaintiff, | ) | |
| | ) | NOV 2 0 2002 |
| vs. | ) | No. 99 C 8252 |
| | ) | Judge Joan H. Lefkow |
| CITY OF EVANSTON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Edward Franklin ("Franklin"), brings this law suit against defendant, City of

Evanston ("Evanston"), in Count I pursuant to 42 U.S.C. § 1983, alleging violations of his

constitutional rights under the Due Process and Equal Protection Clauses of the Fourteenth

Amendment; in Count II pursuant to 42 U.S.C. § 1981, alleging disparate treatment and impact

based on race discrimination in a contract for employment; in Count III for lost pay and benefits

and in Count IV for emotional distress and mental suffering based on the civil rights violations

alleged in Counts I and II. Before the court are the parties' cross-motions for summary judgment.

The court has jurisdiction over the claims pursuant to 28 U.S.C. § 1343. For the reasons set forth

below, each party's motion is granted in part and denied in part.

### SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and

assess the proof as presented in depositions, answers to interrogatories, admissions, and

affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver* v. *Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). On cross-motions for summary judgment, the court must consider the merits of each motion and assess the burden of proof that each party would bear on an issue at trial. *Santaella* v. *Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997).

## FACTS[1]

Evanston is a municipality under the laws of the State of Illinois. Franklin, an African-American, was employed by Evanston from 1975 to 1997 as a "Driver/Loader" in the Streets and Sanitation Division of the Public Works Department.

On November 7, 1997, Franklin, while off-duty, was arrested by Evanston police detectives and charged with possession of cannabis. Evanston maintains that Franklin admitted

---

[1]The facts as set forth herein, taken from the parties' statements of material facts and supporting materials, are undisputed unless otherwise indicated.

2

at this time that the cannabis was his, while Franklin denies that he ever made such an admission.[2] Franklin was charged with possession of more than ten but less than thirty grams of cannabis, a misdemeanor under the Illinois Criminal Code. Franklin appeared in bond court on the next day, November 8, and the criminal matter was scheduled on the circuit court's calender for November 26, 1997. Shortly after the arrest, EVANSTON REVIEW, a local newspaper, published an article in the "police blotter" section stating that the police arrested Franklin for possession of cannabis. One of Franklin's co-workers brought this article to the attention of Zeltee Edwards ("Edwards"), Franklin's boss and the Superintendent of the Division of Streets and Sanitation.

On or about November 13, 1997, Franklin had a meeting with Edwards to discuss the charge. At this meeting, Franklin was read the charge pending against him and was asked to respond. Franklin indicated that whatever information was made available through the police report and the newspaper article was all that he knew. Franklin also stated that he could not say anything more because he was facing criminal charges. At the close of the meeting, Franklin was suspended without pay.

---

[2]According to Franklin, Evanston attempts to show that he admitted possession of cannabis by relying on his answer of "No" to the deposition question, "Was there anything in the police report which wasn't correct?" Apparently, the police report contains statements by the arresting officers that Franklin admitted the drug was his. According to an affidavit Franklin submitted, at his deposition he understood the police report to be the arrest report, previously marked as exhibit 12 from Edwards' deposition. Franklin asserts that he believed he was answering no to a question whether it was correct that he was arrested, which he never disputed. Franklin, however, does dispute his alleged admission that the cannabis was his. While courts generally disfavor attempts to contradict prior deposition testimony with subsequent affidavits, here Franklin alleges a mistake, and is not simply attempting to change his deposition testimony after the fact. *See Russell* v. *Acme-Evans Co.*, 51 F.3d 64, 67 (7th Cir. 1995) ("Where deposition and affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken . . . ."). Thus, the court considers it a genuine issue of fact as to whether Franklin admitted possession of cannabis.

After the November 13 meeting, a "due cause" meeting was held to determine the level of

discipline Franklin was to receive. The due cause board does not decide the punishment or

discipline to be invoked against an employee but instead sets the maximum penalty available to

the department head (Edwards), who makes the final decision on discipline. At the due cause

meeting, the board found that Franklin had violated Rule 23.1(e) of the Work Rules imposed by

the collective bargaining agreement between Evanston and the American Federation of Federal,

State, County and Municipal Employees ("AFSCME"), and, as a result, Franklin could be

terminated.[3]

On December 12, 1997, Evanston held a pre-disciplinary meeting with Franklin and his

union representative. At this meeting Franklin was asked to respond to the criminal charge

pending against him. Franklin neither admitted nor denied the possession of cannabis. Because

he did not want to jeopardize his defense to the criminal charges, Franklin requested that the

meeting be postponed until after the resolution of his criminal case, which the circuit court had

---

[3]The parties dispute which work rules were in effect regarding employee possession of illegal drugs when Franklin was arrested. Evanston maintains that § 23.1(e) of the AFSCME Uniform Work Rules were in effect. Rule 23.1 prohibits employees from possessing illegal drugs at any time. Franklin argues that § 23.1 was not in effect because it was revised in July 1991, after arbitration. Franklin maintains that the revised policy reads as follows:

I.C.  Evanston of Evanston employees are prohibited from:
1.    the use, possession or sale of alcohol on or in Evanston property during the
      employee's working hours.
2.    the use, possession, sale, or transfer of alcohol or drugs which adversely affects
      the employee's work performance, the safety of the public or other Evanston
      employees;
3.    being impaired by alcohol or drugs while working;
4.    consuming alcohol or using drugs in public while in Evanston uniform.

This dispute does not affect the outcome of the motions.

4

continued until February 5, 1998. Evanston denied this request and determined that Franklin should be terminated.[4] Franklin was subsequently terminated on December 17, 1997.

On December 26, 1997, AFSCME filed a grievance on Franklin's behalf. A hearing was held on January 26, 1998, but the grievance was denied. AFSCME pursued the matter no further. The grievance panel decided, based on Franklin's "non-response" to the charge and his conversations with the police, that the termination was valid. On February 5, 1999, the criminal case was dismissed *nolle prosse*.

Before Franklin, no other employee had been discharged for a violation under Rule 23.1(e). In 1996, Timothy Hartigan, a traffic engineer, was arrested for driving under the influence ("DUI") but was not discharged. Two African-American employees were subsequently arrested for DUI and also were not discharged. Franklin also points to employees who have tested positive for drugs while at work, committed assault, and shot people and have retained their employment with Evanston.

## DISCUSSION

Franklin, in his motion for summary judgment on his section 1983 claims, first argues that the undisputed facts demonstrate that Evanston deprived him of his protected property interest in continued employment without due process of law when it (a) failed to give adequate notice of the pre-disciplinary hearing, (b) deprived him of an opportunity to respond to the threatened discipline or discharge at a meaningful time and in an meaningful manner, (c) denied him the right to confront the police officer witness against him, and (d) required that he choose

---

[4]Franklin does not establish in the record that he asked for a delay, other than Edwards' testimony that "at some point" this request was made, perhaps at the grievance hearing. The court credits plaintiff's version for purposes of this motion, however.

between his privilege against self-incrimination and his opportunity to respond at the pre-disciplinary hearing (as well as the post-termination hearing) by insisting that he discuss the pending criminal charge. Second, Franklin argues that the undisputed facts demonstrate that he was deprived of his liberty interest in his good reputation without due process of law when Evanston made public allegations of criminality and thereby foreclosed his opportunity for other public employment, and when it fired him based on an arrest, which conduct was contrary to the Illinois Human Rights Act, 775 ILCS 56/2-103. Third, Franklin argues that Evanston deprived him of due process when it conditioned his continued employment on a waiver of his privilege against self-incrimination, and fourth, he argues that he was denied equal protection of the laws because Evanston's policy of discharging an employee based on an arrest record is racially discriminatory.

For his section 1981 claims, Franklin contends that as an African-American, (a) he was subjected to a more stringent penalty for violation of a work rule than similarly situated white employees and (b) the policy of using an arrest as a basis for discharge and the policy to treat drug arrests more harshly than alcohol abuse has a disparate impact on African-Americans, all in violation of the Equal Protection Clause.

In its motion for summary judgment Evanston argues that it is entitled to judgment as a matter of law (1) because Franklin had no property interest in continued employment once he violated Evanston's drug policy; (2) because Franklin was given all the process he was due; (3) that Franklin was not fired based on his arrest record but because he violated a Evanston policy governing his employment; (4) that Evanston did not deprive Franklin of any liberty interest by damaging his reputation or foreclosing other opportunities for employment; (5) that Evanston's

6

drug policy was not discriminatory either in application to or in impact on African-Americans; and (6) Evanston did not violate Franklin's constitutional right to privacy. Evanston also argues that Franklin has no claim for back wages, pension rights or other compensation or damages and that any alleged claim for emotional distress and mental suffering is preempted by the Illinois Human Rights Act because it is inextricably bound to his claim for deprivation of his civil rights.

## A.    Count I: § 1983 Claims

In order to prevail on a § 1983 claim, a plaintiff must establish that the defendant deprived him of a constitutional or federal right and that the defendant acted under color of state law. *Brokaw* v. *Mercer County*, 235 F.3d 1000, 1009 (7th Cir. 2000) (citations omitted). "Although a municipality is subject to suit under § 1983, *respondeat superior* liability will not suffice to impose § 1983 liability on the City." *Baskin* v. *City of Des Plaines*, 138 F.3d 701, 704 (7th Cir. 1998). Instead, a municipality may be held liable under § 1983 in one of three ways:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*Baxter* v. *Vigo County Sch. Corp.*, 26 F.3d 728, 734-35 (7th Cir. 1994), citing *Monell* v. *Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

## 1.    *Procedural Due Process*

The Due Process Clause imposes constraints on governmental decisions that deprive individuals of life, liberty or property. *Cleveland Bd. of Educ.* v. *Loudermill*, 470 U.S. 532, 541 (1985). The court follows a two-step process in analyzing procedural due process claims: "The first step requires [the court] to determine whether the plaintiff has been deprived of a protected

interest; the second requires a determination of what process is due." *Sonnleitner* v. *York*, 304 F.3d 704, 711, (7th Cir. 2002), quoting *Townsend* v. *Vallas*, 256 F.3d 661, 673 (7th Cir. 2001).

Franklin argues that his procedural due process rights were violated because he had a protectable property interest in his job, and the pre- and post-termination proceedings did not give him an adequate opportunity to respond.[5]  Evanston argues that Franklin has no property interest in continued employment because he violated Evanston's drug policy, but this reflects a misunderstanding of procedural due process.  Evanston admits that under the Work Rules Franklin could only be discharged "for cause." (Def. Mot. for Summ. J. p. 5.)  It is well established that a government employee terminable only "for cause" has a protectable property interest in his or her job.  *See, e.g., Cleveland Bd. of Educ.*, 470 U.S. at 538; *Perry* v. *Sinderman*, 408 U.S. 593, 602-03 (1973); *Sonnleitner*, 304 F.3d at 711; *Lalvani* v. *Cook County, Ill.*, 269 F.3d 785, 791 (7th Cir. 2001); *Cain* v. *Larsen*, 879 F.2d 1424, 1426 (7th Cir. 1989).  Thus, the issues are what process Franklin was due, and whether he received it.

In *Cleveland Bd. of Educ.*, the Supreme Court addressed the process due a discharged government employee, holding that an employee was entitled to a hearing prior to discharge.

---

[5]Franklin also contends that Evanston deprived him of a liberty interest.  To show a deprivation of a liberty interest, Franklin must show: "(1) he was stigmatized by the defendant's conduct; (2) the stigmatizing information was publicly disclosed; and (3) he suffered tangible loss of other employment opportunities as a result of the public disclosure. *Altman* v. *City of Chicago*, No. 99 C 6496, 2000 WL 1648932, at *5 (N.D. Ill. 2000) (Andersen, J.), citing *Harris* v. *City of Auburn*, 27 F.3d 1284, 1286 (7th Cir. 1994).  Franklin fails to create an issue of fact as to either the public disclosure of the alleged stigmatizing information or the tangible loss of other employment opportunities.  The undisputed facts show that the only disclosure of the information came through its release in EVANSTON REVIEW, and that Franklin was able to obtain subsequent employment after being terminated. (Pl. L.R. 56.1 ¶ 9; Pl. Resp. to Def. L.R. 56.1 ¶ 29.)  Furthermore, even if Evanston did make the information public, nothing in the alleged statements was defamatory or otherwise improperly released. *See Johnson* v. *Martin*, 943 F.2d 15, 17 (7th Cir. 1991).

8

470 U.S. at 542. The Court reaffirmed *Cleveland Bd. of Educ.* in *Gilbert* v. *Homar*, 520 U.S. 924, 929 (1997), explaining that

> . . . a public employee dismissable only for cause [is] entitled to a very limited hearing prior to his termination, to be followed by a more comprehensive post-termination hearing. Stressing that the pretermination hearing "should be an initial check against mistaken decisions–essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action," [*Cleveland Bd. of Educ.*, 470 U.S. at 545-46], we held that pretermination process need only include oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his side of the story.

The three critical elements are "(1) oral or written notice of the charges, (2) an explanation of the employer's evidence, and (3) an opportunity to tell his side of the story." *Staples* v. *City of Milwaukee*, 142 F.3d 383, 385 (7th Cir. 1998).

Here, Franklin was given notice of the charges[6] and an explanation of the employer's evidence. It is the third step that is problematic. Franklin testified that he did not respond to the inquiries at the pre-termination hearing because to do so might jeopardize his defense of the criminal charge.[7] Evanston demurs, stating it was not attempting to compel evidence from Franklin but was merely relying on his alleged voluntary admission to the police officers that the cannabis on his person belonged to him. This argument begs the question. Edwards' reliance on the information contained in the police report is merely fulfillment of the second element, an

---

[6]Franklin also argues that he was given insufficient notice of the pre-termination hearing because he was not notified about the hearing until the day it was held and because he did not receive personal notice of the meeting. Notice in such circumstances need not be given "days or weeks in advance, but even a few hours' warning would permit the employee to gather his thoughts and his evidence and to make an informed decision about the best way to respond to the charges." *Staples*, 142 F.3d at 386. Edwards testified that both Franklin and his union representative were sent a letter dated December 5, 1997 notifying Franklin of the disciplinary hearing on December 12, 1997. The court concludes that this is sufficient to give Franklin notice of the pre-termination hearing.

[7]Franklin asserts that he "repeated over and over again" at his predisciplinary meeting that he was involved in a criminal case and did not want to incriminate himself. (Pl. L.R. 56.1 ¶ 56.) Evanston does not dispute this fact.

explanation of the reasons for the anticipated discharge. It does not establish that Franklin had an opportunity to tell his side of the story.

In *Atwell* v. *Lisle Park Dist.*, 286 F.3d 987 (7th Cir. 2002), the Seventh Circuit examined the relationship between a government employer's attempt to gain incriminating information and an employee's Fifth Amendment rights. The court noted that "[the government] has every right to investigate allegations of misconduct by its employees, and even to force them to answer questions pertinent to the investigation, but if it does that it must give them immunity from criminal prosecution on the basis of their answers."[8] *Id.* at 990. The court further explained that "the government employer who wants to ask an employee potentially incriminating questions must first *warn* him that because of the immunity to which the cases entitle him, he may not refuse to answer the questions on the ground that the answers may incriminate him." *Id.* (emphasis in original). The court's reasoning was clear. If employees are unaware that immunity protects their answers to the questions the government employer poses, they may "instinctively 'take the Fifth' and by doing so unknowingly set themselves up to be fired without recourse." *Id.* Thus, the warning would serve to notify the employee that he may be fired for refusing to answer the employer's questions.

There is no genuine issue of fact that Evanston did not warn Franklin of any immunity that protected him.[9] Evanston claims, however, that this is irrelevant because they were not

---

[8] As the district court in *Atwell* recognized, this immunity applies to questions that are "specifically, directly, and narrowly tailored to the performance of official duties" and is "self-executing." *Atwell* v. *Lisle Park Dist.*, No. 00 C 7267, 2001 WL 641101, at *3 (N.D. Ill. March 8, 2001) (Kocoras, J.).

[9] "For these purposes, moreover, the state is treated as a unit: "if the [public employer] insisted on [the plaintiff employee's] giving evidence that might show she had committed a crime, the state's attorney could not use that evidence to prosecute her." *Atwell*, 286 F.3d 990.

10

asking Franklin potentially incriminating questions or conducting a criminal investigation. Evanston argues that it was merely giving Franklin an opportunity to respond completely for his benefit alone. The court sees no import to Evanston's distinction. As Fifth Amendment cases make clear, questions concerning his possession of cannabis were by their nature incriminating. *E.g.*, *Atwell*, 286 F.3d at 990 ("The government is not allowed to force a person to make a statement, even out of court, that might be used as evidence that he had committed a crime."); *In the Matter of Maurice*, 73 F.3d 124, 126 (7th Cir. 1995) ("The fifth amendment creates a privilege not to provide information that may incriminate the speaker or provide a link leading to incriminating evidence."). Thus, Evanston had two options: it could have explicitly warned Franklin that he had immunity for the statements he was to make concerning the pending criminal charges and was, therefore, required to answer, or it could have continued the suspension without pay until the criminal case had been completed. Evanston chose neither of these options, and, therefore, did not give Franklin an adequate opportunity to respond to the charges pending against him. Franklin's procedural due process rights were violated,[10] and summary judgment is appropriate in Franklin's favor on this claim if Evanston can be held liable as a final policymaker under *Monell* principles.

Returning to the municipal liability principles stated above, the court finds no evidence that Evanston has an express "policy" of requiring an employee to forego his Fifth Amendment privilege on pain of losing his job. Neither is there evidence that could lead a jury to find a

---

[10]To the extent Franklin claims that his constitutional rights were violated when Evanston allegedly conditioned his employment on the waiver of his Fifth Amendment privilege, the claim must fail. As explained, Evanston's failure was not to demand a waiver of rights but a failure to warn Franklin that he must answer, or to delay the hearing.

widespread practice that, while not express or written, is so well settled that it carries the force of law.[11] The only Fifth Amendment violation Franklin points to is his own. *See Gable* v. *City of Chicago,* 296 F.3d 531, 538 (7th Cir. 2002) (concluding that three incidents of alleged constitutional violations did not amount to a persistent or widespread practice), citing *Denno* v. *School Bd. of Volusia County, Fla.,* 218 F.3d 1267, 1277 (11th Cir. 2000) (holding that four cases of alleged constitutional deprivation was not persistent and widespread).

But Franklin is persuasive that his constitutional injury was caused by a person with final policymaking authority. Determining who has final policymaking authority is a question of state or local law. *Horowitz* v. *Bd. of Ed. of Avoca Sch. Dist. No. 37,* 260 F.3d 602, 619 (7th Cir. 2001). "[T]he trial judge must identify those officials or governmental bodies who speak with final policy-making authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Id.* The court must decide who has "authority to adopt rules for the conduct of government." *Auriemma* v. *Rice,* 957 F.2d 397, 401 (7th Cir. 1992). A final policymaker may delegate this authority to adopt rules, but this delegation must be the authority to set policy, not a mere delegation of final authority to make a decision. *Kujawski* v. *Bd. of Comm'rs of Bartholomew County, Indiana,* 183 F.3d 734, 739 (7th Cir. 1999).

There is no genuine issue of fact that Judith Witt, Director of Human Resources, ratified Edwards' decision to fire Franklin. Moreover, Witt was allowed to draft reasonable rules under

---

[11]Although one would assume that Evanston would have instructed its department heads with respect to Fifth Amendment issues arising in pre-termination hearings, there is no evidence of it in the record. The absence of official policy might permit the inference that a policy of disregard of the right may have existed, but such an inference is not necessary to disposition of the case and is not drawn.

Evanston's contract with the AFSCME. These AFSCME rules presumptively covered both firing decisions and the procedures to be used in firing employees. Thus, the court is satisfied that Witt had the authority to set policy, and that her ratification of the decision to fire Franklin may impute liability to Evanston. *See Webb v. City of Chester, Ill.,* 813 F.2d 824, 829 (7th Cir.1987), quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986) (although doctrine of *respondeat superior* does not apply to § 1983 claims, "it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances.").

Because the court finds that a final policymaker approved the action, Evanston may be liable.

2.    *Deprivations of Liberty Arising From a State Statute*

Franklin next contends that he was deprived of a liberty interest arising from the Illinois Human Rights Act, 775 ILCS 5/2-103, which prohibits an employer from inquiring into or using the fact of an arrest as a basis to discharge an employee. In the first instance, Franklin is incorrect in asserting that the violation of such a state statute is grounds for imposing liability under § 1983. *See White* v. *Olig,* 56 F.3d 817, 820 (7th Cir. 1995) ("It is well known that Section 1983 imposes liability only for violations of rights protected by the Constitution and laws of the United States."). It is true that state statutes may create liberty interests that implicate the Fourteenth Amendment if taken away without procedural due process, but this arises in the context of state statutes and regulations involving prisoners or inmates. *See, e.g., Sandin* v. *Conner,* 515 U.S. 472 (1995); *Thielman* v. *Leean,* 282 F.3d 478, 482 (7th Cir. 2002); *Kraushaar* v. *Flanigan,* 45 F.3d 1040 (7th Cir. 1995); *Aalders* v. *Roth,* No. 02 C 4729, 2002 WL

13

1998293 (N.D. Ill. Aug. 28, 2002) (Coar, J.); *Clapper* v. *Wisconsin Dep't of Corr.*, 946 F. Supp.

672 (E.D. Wis. 1996). As the Supreme Court recognized in *Sandin*:

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin*, 515 U.S. at 484. Thus, no liberty interest was created by the Illinois Human Rights Act.

Even if such a liberty interest existed, Evanston is persuasive that it did not fire Franklin because

he had an arrest record; rather, the evidence is undisputed that Evanston determined that he had

violated a work rule against possession of controlled substances. As such, Evanston is entitled to

judgment on this claim.

3.     *Equal Protection*

To establish a *prima facie* case under the Equal Protection Clause of the Fourteenth

Amendment, Franklin must demonstrate that he "(1) is a member of a protected class; (2) is

otherwise similarly situated to members of the unprotected class; (3) suffered an adverse

employment action; (4) was treated differently from members of the unprotected class; and (5)

the [municipality] acted with discriminatory intent." *McPhaul* v. *Bd. of Comm'rs of Madison

County*, 226 F.3d 558, 564 (7th Cir. 2000); *Greer* v. *Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000).

With respect to the fifth element, Franklin must show that Evanston "acted with a nefarious

discriminatory purpose" because he is African-American, *McPhaul*, 226 F.3d at 564, quoting

*Nabozny* v. *Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996), which he is unable to do.

14

Franklin argues that Evanston's use of arrest records has "a special impact on African Americans because a higher percentage of them have arrest records." (Def. Memo. Summ. J. p. 10.) As already indicated, the evidence is undisputed that it was not because Franklin had an arrest or arrest record that he was fired. The arrest was merely the occasion through which the matter came to the attention of Evanston. Thus, *McGraven* v. *City of Chicago*, 18 F. Supp. 2d 877, 882-83 (N.D. Ill. 1998), on which Franklin relies, is inapposite as it concerned allegations that an arrest record rule was implemented with the intent and effect of discriminating against African-Americans in violation of the Equal Protection Clause. *City of Cairo* v. *Fair Employment Practices Comm'n*, 21 Ill. App. 3d 358, 315 N.E. 2d 344 (1974), is even more inapposite as it was not brought under the Equal Protection Clause but under Illinois' anti-discrimination law under which "disparate impact" doctrine applies without regard to discriminatory intent. *Id.* at 347. The same is true of *Gregory* v. *Litton Sys., Inc.*, 316 F. Supp. 401 (C.D. Cal. 1970).

Franklin is unable to establish that he was discriminated against on the basis of his having been arrested. Therefore, summary judgment on the equal protection claims is granted in Evanston's favor.

15

**B.    Count II: 42 U.S.C. § 1981**

Section 1981[12] bars all racial discrimination in the making and enforcing of contracts. Because they do not mention it the court infers the parties do not dispute that Franklin had an employment contract with Evanston pursuant to Evanston's Work Rules, which provided that "[d]iscipline and discharge shall be for just cause." (Pl. L.R. 56.1 ¶ 36.). A *prima facie* case of discrimination under § 1981 is predicated on the same elements as a race discrimination claim under Title VII. *Bratton* v. *Roadway Package Sys. Inc.*, 77 F.3d 168, 176 (7th Cir. 1996). Thus, Franklin must establish that: (1) he was a member of a protected class; (2) he was performing according to Evanston's expectations; (3) he suffered an adverse contractual action; and (4) similarly situated white individuals were treated more favorably. *Id.* If Franklin establishes a *prima facie* case, the burden shifts to Evanston to "articulate some legitimate, nondiscriminatory reason" for its action. *Gonzalez* v. *Ingersoll Milling Mach. Co.*, 133 F.3d 1025, 1031 (7th Cir. 1998). If Evanston meets its burden of establishing a nondiscriminatory reason for the layoff, Franklin has an opportunity to show that the articulated reason was in fact pretext. *Id.* Franklin proceeds both on disparate treatment and disparate impact theories against Evanston under § 1981.

---

[12]42 U.S.C. § 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every other kind, and to no other.

## 1.     Disparate Treatment

Franklin has established the first three factors for the *prima facie* case. Franklin, an African-American, is a member of a protected class. In addition, Franklin was performing according to Evanston's expectations, as Franklin presents undisputed evidence that Edwards, Franklin's boss, described Franklin's work as "above average." (Pl. L.R. 56.1 ¶ 42.)

With respect to being similarly situated to white employees, Franklin must show "that he is similarly situated with respect to performance, qualifications and conduct." *Snipes* v. *Illinois Dep't of Corr.*, 291 F.3d 460, 463 (7th Cir. 2002). This requires a showing "that there is someone who is directly comparable to her in all material respects." *Patterson* v. *Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). Factors courts are to consider include whether "the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Snipes*, 291 F.3d at 463, quoting *Radue* v. *Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000).

Franklin argues that white individuals charged with other crimes, including DUI and assault, were not discharged. Franklin specifically points to Timothy Hartigan ("Hartigan"), a white employee convicted of DUI who was not terminated. Evanston argues that Franklin is not similarly situated with Hartigan because Franklin, employed as a Driver/Loader, was terminated for possession of illegal drugs, while Hartigan, a traffic engineer with no contact with the public, was convicted of a crime not involving an illegal substance. Evanston also points out that two African-American Evanston employees were convicted of DUI and also not discharged. Further, the two employees had different supervisors who made the decisions concerning their discipline.

(Pl. L.R. 56.1 ¶ 37; Witt Dep. at 39.) Evanston cites several cases that support its position that Franklin is not similarly situated with his white comparables. *See, e.g., Snipes*, 291 F.3d at 463 (affirming district court's conclusion that two employees were not similarly situated because they had different supervisors, despite the fact that employees were subject to the same written attendance policy and formal disciplinary process); *Patterson*, 281 F.3d at 680 (finding that plaintiff was not comparable to another employee in all material respects where plaintiff and other employee were evaluated by different supervisors); *Radue*, 219 F.3d at 618 (finding that lack of common supervisor precluded showing of similarity because "when different decision-makers are involved, two decisions are rarely similarly situated in all respects."). In addition to Franklin's inability to identify a white employee who is similarly situated, here it is undisputed that African-American employees who were charged with DUI were treated the same as whites in that circumstance. Although one could logically argue that driving under the influence is at least as unbecoming to a public servant as is possession of cannabis, this type of inequality would not state a claim for race discrimination under § 1981.

Because Franklin is unable to show that he is similarly situated with any other employee, his *prima facie* case of discrimination under § 1981 must fail. Therefore, summary judgment is granted in favor of Evanston on the disparate treatment claim.

2. *Disparate Impact*

Franklin also attempts to advance a disparate impact claim against Evanston under § 1981. The court need not address this, however, as § 1981 liability requires intentional discrimination and is not supported by proof of disparate impact. *E.g., General Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982) ("We conclude, therefore, that

18

§ 1981, like the Equal Protection Clause, can be violated only by purposeful discrimination); *Mozee* v. *Am. Commercial Marine Serv. Co.*, 940 F.2d 1036, 1051 (7th Cir. 1991) ("The standards for proving section 1981 liability closely parallel those for Title VII, with the notable exception that proof of disparate impact does not support section 1981 liability since intentional discrimination is required."); *Payne* v. *Abbott Labs.*, 999 F. Supp. 1145, 1153 (N.D. Ill. 1998) (Leinenweber, J.) ("Since, only intentional, purposeful discrimination constitutes a violation of § 1981, proof of disparate impact does not support § 1981 liability.") Thus, summary judgment is granted in favor of Evanston on the disparate impact claim under § 1981.

3. *Right of Confrontation*

Insofar as Franklin claims denial of his right to confrontation, his claim is meritless because the pre-termination hearing was not a criminal proceeding. *See Van Harken* v. *City of Chicago*, 103 F.3d 1346, 1352 (7th Cir. 1997).

**C. Counts III and IV**

In Count III of his Amended Complaint, Franklin alleges a claim to back wages, pension rights, and other compensation due him under the collective bargaining agreement between AFSCME and Evanston and in Count IV he seeks damages for emotional pain and suffering. To the extent Franklin is alleging a breach of the collective bargaining agreement, he has not put on any evidence of it and he concedes that Counts III and IV merely seek damages for the civil rights claims of Counts I and II. As such, these counts are not claims at all but are deemed as "prayers for relief" under the Civil Rights Claims.

## CONCLUSION

For the reasons stated above, the court grants Franklin's motion for summary judgment [#31] on his claim for deprivation of due process and denies it in all other respects. The court grants City of Evanston's motion for summary judgment [#28] in all respects but the claim for deprivation of due process, in which respect the motion is denied. This case will proceed on the issue of damages only. A status hearing is set for December 12, 2002 at 9:30 a.m. In the meantime, the parties are directed to meet in a sincere effort to resolve this case.

ENTER: _____

JOAN HUMPHREY LEFKOW
United States District Judge

Dated: November 19, 2002

20